

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2005

# In Re:Strategic Tech

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3149

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re:Strategic Tech " (2005). *2005 Decisions*. Paper 821.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/821

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 04-3149
_____

IN RE: STRATEGIC TECHNOLOGIES, INC.

Debtor

GULFSTREAM AEROSPACE CORP.

Appellant

v.

ANTHONY R. CALASCIBETTA

_____

On Appeal from the United States District Court
for the District of New Jersey
(Civil No. 03-5079)
District Judge: Honorable Katharine S. Hayden
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 14, 2005

BEFORE: VAN ANTWERPEN, ALDISERT and WEIS, Circuit Judges

(Filed :  July 19, 2005)
_____

OPINION
_____

VAN ANTWERPEN, Circuit Judge

I. FACTS

Debtor Strategic Technologies, Inc. ("STI") was in the business of providing shipping-related services to freight carrier customers. STI's clients employed the company to audit their freight carrier invoices and inform them of the charges. The clients then could pay their bills by depositing funds with STI, which would then forward the funds to the carrier. STI generally commingled its customers' funds in "funding accounts," maintained at different banks, but it did not maintain records to match or reconcile monies that customers deposited with monies that STI paid out to the freight carriers.

STI maintained one of these funding accounts at Fleet Bank (the "Fleet Account"). This account was essentially a pooled account into which STI deposited checks from its customers until it withdrew those funds to pay their freight charges. As a pooled account, the customers' funds were commingled in this account, but STI did not keep accurate records to track individual deposits and withdrawals on behalf of individual customers.

On June 11, 2002, STI stopped using the Fleet Account and began using an account maintained by Commerce Bank (the "Commerce Funding Account"). The Fleet Account was subsequently closed and the remaining funds totaling $5,132,456.02 were transferred into the Commerce Funding Account by July 5, 2002. On July 11, 2002, the Commerce Funding Account had a negative balance of $2,371,223.54. Later that day, an STI customer deposited $2,983,841.05 leaving a positive balance of $612,617.51. Appellant Gulfstream Aerospace Corp. ("Gulfstream"), one of STI's clients, deposited $208,436.89 into the Commerce Funding Account on July 15, 2002. Several more

deposits and withdrawals were made by STI and its clients and, on July 17, the ending balance was $3,130,576.44. The next day, STI filed for bankruptcy protection under Chapter 11.

As it turns out, no later than 1993, STI had begun using monies in the client funding accounts for purposes unrelated to paying its customers' freight bills. For instance, STI tapped its funding accounts to fund payroll and operating accounts, and Marc Cooper, the company's president and sole shareholder, diverted money for his own personal use. STI covered its misappropriations by engaging in what was essentially a kiting scheme. As it depleted the funding accounts, STI relied on newer funds deposited from customers to pay earlier, overdue freight bills of other customers. Eventually the receipts from customers became insufficient to cover the shortfall in the funding accounts, and on July 18, 2002, STI filed for bankruptcy protection under Chapter 11.

On July 31, 2002, the United States Bankruptcy Court for the District of New Jersey converted STI's Chapter 11 proceeding into a Chapter 7 liquidation proceeding and appointed Appellee Anthony Calascibetta as the bankruptcy trustee (the "Trustee"). On August 14, 2002, the Bankruptcy Court ordered the Trustee to place all funds remaining in STI's various bank accounts, including the Commerce Funding Account, into an interest-bearing "segregated account." The Trustee complied by depositing $3,634,438 into the segregated account. On September 24, 2002, the Bankruptcy Court directed the Trustee to pay $255,468.03 from the segregated account to Knoll, Inc., one of

STI's former customers who mistakenly transferred that amount to STI after STI had filed for bankruptcy.

The Trustee commenced an adversary proceeding naming all of STI's customer-creditors as defendants. Through the entry of default judgments and consent orders, the Trustee was able to resolve many of the claims against STI. Eventually, it resolved the claims of all but four of the interested parties through a settlement agreement.

On August 11, 2003, the Bankruptcy Court entered the consent order embodying the settlement agreement. The order called for the distribution of $423,155.73 from the segregated account to Knoll, representing funds mistakenly transferred to STI after the bankruptcy case was filed. The remaining funds were distributed pro rata to the settling defendants, with a portion set aside to cover the costs of administration of the bankruptcy estate and other priority claims. The agreement was to become effective upon entry of a final order granting summary judgment in the Bankruptcy Court in favor of the Trustee with respect to any non-settling defendant.

On August 13, 2003, the Trustee filed a motion for summary judgment against the four hold-out defendants. Prior to the return date of that motion, all but Gulfstream agreed to the settlement. Gulfstream filed a cross-motion for partial summary judgment seeking return of $208,436.89 that it had deposited into the Commerce Funding Account on July 15, 2002, three days before STI filed for bankruptcy. Gulfstream offered three arguments in support of its motion: 1) none of the money in the funding account is property of the bankruptcy estate and therefore it can only be used to pay the beneficial

4

owners; 2) although the trust money is commingled, the universe of co-owners of the money is determinable; and 3) the Trustee erred in preferring the claim of Knoll over Gulfstream.[1]

The District Court rejected Gulfstream's arguments and affirmed the decision of the Bankruptcy Court. Gulfstream timely appealed.

## II. JURISDICTION & STANDARD OF REVIEW

The District Court derives its jurisdiction over bankruptcy matters from 28 U.S.C. § 1334 (2005). This section confers upon the District Court "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11." Id. at (a)-(b). Section 157(a) of the Bankruptcy Code allows a district court to refer most of these matters to a bankruptcy court. 28 U.S.C. § 157(a) (2005); see In re Combustion Eng'g, Inc., 391 F.3d 190, 226 (3d Cir. 2004).

We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(d) and 1291. "[T]his Court reviews 'the Bankruptcy Court's findings of fact for clear error and exercises plenary review over the Bankruptcy Court's legal determinations.'" Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak), 406 F.3d 214, 221-22 (3d Cir. 2005) (citing Duke Energy Royal, LLC v. Pillowtex Corp. (In re Pillowtex, Inc.), 349 F.3d 711, 716 (3d Cir. 2003)).

---

[1] Although Gulfstream compares its claim to Knoll's, it does not argue on appeal that Knoll was not entitled to the return of funds it deposited after STI filed for bankruptcy.

III. ANALYSIS

Gulfstream seeks the return of funds it entrusted to STI shortly before STI filed for bankruptcy. To support its case, Gulfstream relies on two alternative principles. First, Gulfstream, argues that all of the money in the Commerce Funding Account amounted to trust assets and therefore the Bankruptcy Court had no jurisdiction to direct the disposition of those funds. In the alternative, Gulfstream argues that if the money in the Commerce Funding Account was commingled, the Court was obligated to apply the Lowest Intermediate Balancing Test. For the reasons set forth below, we reject both theories and affirm.

A. The Court had Jurisdiction Over the Commerce Funding Account

Gulfstream's initial argument is that the Bankruptcy Court and the Trustee agree that the money in the Commerce Funding Account was primarily customer money held in a constructive trust, and therefore, the Bankruptcy Court did not have jurisdiction to direct the disposition of those funds. We find two flaws with this theory.

First, despite its statements that the amount of STI money in the Commerce Funding Account was negligible, the Bankruptcy Court specifically found that Gulfstream's funds were commingled in a single account with other clients' funds and STI funds. (Appellant App. at A349.) Neither party has demonstrated that this finding was clearly erroneous. See Zinchiak, 406 F.3d at 221-22.

When funds are commingled, and a trust recipient claims a right in those funds, "a claimant must make two showings: (1) demonstrate that the trust relationship and its legal

6

source exist, and (2) identify and trace the trust funds if they are commingled." Goldberg v. N.J. Lawyers' Fund for Client Prot., 932 F.2d 273, 280 (3d Cir. 1991). Because Gulfstream could not sufficiently identify its funds in the commingled account, all of the Commerce Account Funds are presumed to be part of the bankruptcy estate.

Moreover, the question of whether the funds were part of the bankruptcy estate is distinct from the question of whether the Bankruptcy Court had jurisdiction over the disposition of the funds. Even if Gulfstream were able to establish that all of the funds in the Commerce Funding Account were trust assets, the Bankruptcy Court would still retain jurisdiction to return those funds to their rightful owners. See Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 402 (4th Cir. 1992).

## B. The Court Properly Ordered Pro Rata Distribution

Gulfstream claims that once the Bankruptcy Court determined that the assets were commingled assets, the Court was required to apply the Lowest Intermediate Balancing Test ("LIBT") to allow it to trace its funds in the trust account. "The LIBT is a judicial construct that some federal courts have applied to ease a beneficiary's tracing burden when 'a trustee commingles trust funds with other monies in a single account.'" City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 102 (3d Cir. 1994) (quoting In re Columbia Gas Sys., 997 F.2d 1039, 1063 (3d Cir. 1993)). Under the LIBT, a court assumes that trust funds are the last monies withdrawn from a commingled account. Id. However, once trust money is removed (i.e. the balance of the commingled account dips below the total amount of money claimed as trust funds), that money is not replenished, even if more

7

funds are deposited.  Id.  "Therefore, the lowest intermediate balance in a commingled account represents trust funds that have never been dissipated and which are reasonably identifiable."  Id. (emphasis added).

Gulfstream argues that, applying the LIBT, it can trace $208,436.89 of its money in the Commerce Funding Account.  However, Gulfstream ignores the fact that its funds were not only commingled in an account with STI's assets, but also with the trust assets of other STI customers.

While the LIBT is helpful in identifying one party's assets commingled with the trustee, its value is significantly lessened when the assets are commingled with many other similarly situated individuals.  City of Farrell, 41 F.3d at 102 ("[T]he lowest intermediate balance in a commingled account represents trust funds which are reasonably identifiable.")  If the Bankruptcy Court had applied the LIBT to identify Gulfstream's funds, it would have done so at the possible expense of other customers similarly situated.  In situations such as this one, when one party is claiming assets that are commingled with the assets of someone similarly situated, this Court has indicated a preference for a pro rata distribution.  See Goldberg, 932 F.2d at 280 ("In general, courts favor a pro rata distribution of funds when such funds are claimed by creditors of like status.").  Therefore, the Bankruptcy Court properly determined that all of the assets originating in the Commerce Funding Account should be distributed pro rata.

## C. The Bankruptcy Court did not Err in Paying Expenses

Finally, Gulfstream argues that the Bankruptcy Court should not have used client trust funds to pay the expenses of the bankruptcy. However, as discussed above, the funds that Gulfstream alleges are held in trust cannot be adequately traced. "[T]o establish rights as a trust recipient, a claimant must . . . identify and trace the trust funds if they are commingled." Goldberg, 932 F.2d at 280. Since Gulfstream cannot identify and trace the trust assets, the Court's distribution was proper.

## IV. CONCLUSION

For the reasons set forth above, we affirm.