**In re DELTA PRODUCE,
LP, et al., Debtors.**

**Kingdom Fresh Produce,
et al., Appellants,**

**v.**

**Bexar County, et al., Appellees.**

Cv. No. 5:12–cv–01127–DAE.
Bankruptcy No. 12–50073–a998.

United States District Court,
W.D. Texas,
San Antonio Division.

Sept. 27, 2013.

734

James Samuel Wilkins, Willis & Wilkins, LLP, San Antonio, TX, Kevin P. Kelley,

Michael J. Keaton, Keaton & Associates, P.C., Deerfield, IL, for Plaintiff.

Bruce W. Akerly, Cantey Hanger LLP, Dallas, TX, John Kurt Stephen, Cardenas, Whitis, Stephen, et al., McAllen, TX, Zachary Burke Aoki, Thurman & Phillips PC, David George Aelvoet, Linebarger Goggan Blair & Sampson, LLP, Craig A. Stokes, Jessie Lopez, Maurleen Worley Cobb, Jessie Lopez, Stokes Law Office, Randall A. Pulman, Pulman, Cappuccio, Pullen & Benson, LLP, R. Glen Ayers, Jr., Allen M. Debard, William Richard Davis, Jr., Langley & Banack, Inc., Paul D. Barkhurst, Barkhurst & Hinojosa, P.C., Robert L. Barrows, Warren, Drugan and Barrows, San Antonio, TX, Michael J. Black, Burns & Black PLLC, Diana M. Geis, Oppenheimer, Blend, Harrison & Tate, San Antonio, TX, Bart M. Botta, Harvest Crown Co., Inc., Rynn & Janowsky, LLP, Newport Beach, CA, for Defendants.

*MEMORANDUM OPINION AND ORDER AFFIRMING IN PART AND VACATING IN PART THE BANKRUPTCY COURT'S ORDER GRANTING SPECIAL PACA TRUST COUNSEL'S FIRST INTERIM APPLICATION FOR ATTORNEY FEES*

DAVID ALAN EZRA, Senior District Judge.

Kingdom Fresh Produce, Inc. ("Kingdom Fresh"), I. Kunik Company, Inc. ("I. Kunik"), Five Brothers Jalisco Produce Co. Inc. d/b/a Bonanza 2001 ("Five Brothers"), Rio Bravo Produce Limited, LLC ("Rio Bravo"), and G.R. Produce, Inc. ("G.R. Produce") (collectively, "PACA Claimants") appeal the bankruptcy court's September 25, 2012 Order granting the First Fee Application of Special PACA Trust Counsel. (Bankr.Dkt. # 320.)[1] The

bankruptcy court's Order granted Special PACA Trust Counsel ("Special Counsel"), Craig A. Stokes, attorney fees to be paid from non-estate trust assets under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499(a)–(t). Having considered the PACA Claimants' and Special Counsel's arguments, the Court **VACATES** the Order of the bankruptcy court.

*BACKGROUND*

This matter arises from three PACA-related lawsuits filed in the United States District Courts for the Western District of Texas against Delta Produce LP ("Delta"), a local produce company. Muller Trading Company, Inc. ("Muller") filed the first PACA-related lawsuit against Delta, Walter Jensen, and Superior Tomato–Avocado on January 28, 2011, in Austin, Texas. (Case No. 1:11–cv–01114–SS.) Wilson–Davis Company ("Wilson–Davis") filed the second lawsuit against Delta, Walter Jensen, Superior Tomato–Avocado, and STA Management, amongst others on December 28, 2011, in San Antonio, Texas. (Case No. 5:11–cv–01125–XR.) Rio Bravo, one of the PACA Claimants in the instant action, filed the third lawsuit against Delta, Walter Jensen, Superior Tomato–Avocado, and STA Management also on December 28, 2011, in San Antonio. (Case No. 5:11–cv–01126–XR.) Since Muller's lawsuit was the first to be filed, Judge Rodriguez consolidated and transferred the Wilson–Davis and Rio Bravo cases to Judge Sparks in Austin. (Case No. 5:11–cv–01125–XR, Dkt. # 10; Case No. 5:11–cv–01126–XR, Dkt. # 9.)

On January 3, 2012, Delta filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code in the United

---

1. Except as otherwise noted, all citations are to the bankruptcy docket in Case No. SA:12–BK–50073–LMC.

States Bankruptcy Court for the Western District of Texas (Bankr.Dkt. # 1). Delta then moved to impose an automatic stay of the consolidated district court proceedings under 11 U.S.C. § 362. (Case No. 1:11–cv–01114–SS, Dkt. ## 24, 26.) Two days later, Delta asked the district court to abate its proceedings and allow various creditors, including PACA creditors, to assert their claims before the Bankruptcy Court in San Antonio. (*Id.*) Counsel for PACA Claimant Rio Bravo consented to the transfer. (*Id.*) Judge Sparks transferred the case to Judge Rodriguez in San Antonio.. (Case No. 1:11–cv–01114–SS, Dkt. # 27.) Judge Rodriguez then referred the case to the bankruptcy court in San Antonio, noting that "the parties apparently agree that the Bankruptcy Court would be the appropriate and preferable place to adjudicate the claims presented in this case." (Case No. 5:12–cv–00046–XR, Dkt. # 28.)

After Judge Rodriguez referred the PACA claims to the bankruptcy court, Delta filed a proposed PACA Claim Procedure in bankruptcy court. (Bankr.Dkt. # 31.) On January 24, 2012, the bankruptcy court held a hearing to consider a Motion for Orders Establishing a Deadline to File PACA Trust Claims and for Procedures to Resolve those Claims and for the Appointment of Special Counsel. The following day, the court issued an order directing Special Counsel to undertake various tasks to preserve and collect PACA trust assets, negotiate and compromise debts owed by an account holder of Delta, consider and review claims asserted under the PACA trust, and provide status reports to PACA creditors. (Bankr.Dkt. # 52.) Paragraph 15(b) of the order specified:

> *Special PACA Counsel shall be "entitled" to paid attorney's fees and costs from the PACA trust funds for the services rendered pursuant to this Order.* The Court will determine the reasonable "amount" of such attorney's fees and

costs. To be paid, Special PACA Counsel shall file a motion(s) for attorney's fees and costs, [and] should attach time sheets that have reasonably detailed time entries and which reflect time in increments of ".1" of an hour. Stokes may file interim motions for attorney's fees and costs.

(*Id.* (emphasis added).) No party objected to this order.

After the bankruptcy court's Order for a PACA Claims Procedure established the timeline for adjudicating PACA claims, Delta informed potential PACA creditors of the pending PACA claim procedure. From January to March 2012, PACA Creditors filed claims against Delta as debtor totaling $1,676,015.25. Special Counsel, acting as Trustee for the PACA trust, negotiated PACA claims with Delta and PACA creditors.

On August 14, 2012, Special Counsel filed its First Interim Application for attorney fees. (Bankr.Dkt. # 284.) Special Counsel sought $95,978.00 in attorney fees and $2,492.97 in expenses for work completed between January 3, 2012, and August 7, 2012, to be paid from the PACA trust. (*Id.*)

PACA Claimant Kingdom Fresh objected to Special Counsel's First Interim Application on the ground that the PACA trust funds should not be used to pay Special Counsel's fees. (Bankr.Dkt. # 294.) Kingdom Fresh argued: (1) the Bankruptcy Court lacks subject-matter jurisdiction to use non-estate assets beyond the reach of bankruptcy powers to satisfy the administrative expense claims against the bankruptcy estate; (2) the PACA trust assets that the Debtors hold as trustees cannot be used to pay the Debtors' attorneys or any other administrative expense claims against the bankruptcy estate; and (3) the Debtors' Counsel already had a pre-existing duty to collect the Debtors'

accounts receivable and thus cannot dip into the non-estate PACA trust funds to be paid for that work for the Debtors. (*Id.*)

On September 21, 2012, the bankruptcy court held a hearing to consider Special Counsel's First Interim Application for attorney fees. (Bankr.Dkt. #381 (transcript).) At the hearing, Kingdom Fresh reiterated its concerns that the bankruptcy court did not have subject-matter jurisdiction over the PACA trust funds and therefore could not authorize the distribution of PACA trust funds to pay the First Fee Application. (*Id.* at 6–8.)

Over Kingdom Fresh's objections, the bankruptcy court granted Special Counsel's First Interim Application for attorney fees. (Bankr.Dkt. #320.) This appeal ensued. (Bankr.Dkt. #340.)

## STANDARD OF REVIEW

On appeal, this Court reviews the bankruptcy court's findings of fact under a clearly erroneous standard and reviews its conclusions of law de novo. *In re Scopac*, 624 F.3d 274, 279–80 (5th Cir.2010).

## DISCUSSION

PACA Claimants maintain that because the PACA trust assets are excluded from the bankruptcy estate, the bankruptcy court did not have jurisdiction to award attorney fees from the PACA trust res. To address PACA Claimants' arguments, the Court will first discuss PACA's statutory framework in the context of bankruptcy proceedings and then turn to the scope of the bankruptcy court's jurisdiction.

A. *The Perishable Agricultural Commodities Act ("PACA")*

■■■ Congress designed PACA to regulate the produce industry and promote fair dealings in transactions involving fruits and vegetables. *Golman–Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 350 (5th Cir.2000). As stated in the

House Report to the 1984 amendments to the Act, PACA was

> enacted to encourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices in marking of fresh and frozen fruits and vegetables . . . and providing for collecting damages from any buyer or seller who fails to live up to his contractual obligations.

H.R.Rep. No. 543, 98th Cong., 2d Sess. 3 (1983). To this end, PACA requires buyers of produce to make "full payment promptly," *Bocchi Americas Assocs. Inc. v. Commerce Fresh Mktg. Inc.*, 515 F.3d 383, 387–88 (5th Cir.2008) (quoting 7 U.S.C. § 499b(4)), and if a buyer fails to tender prompt payment, the seller may file a complaint with the United States Department of Agriculture or file a civil suit against the buyer, *id.* (citing 7 U.S.C. § 499e(a)–(b)).

■■■ Because of the proclivity of buyers to default before tendering full payment to sellers, Congress added two powerful tools to enforce buyers' payment obligations and give sellers additional protections. *Id.* First, PACA establishes a scheme in which a buyer of produce on credit is required to hold the produce and its derivatives/proceeds in trust for the unpaid seller. 7 U.S.C. § 499e(c)(2); *Endico Potatoes v. CIT Group/Factoring*, 67 F.3d 1063, 1067 (2d Cir.1995). Ordinary principles of trust law apply to the trusts created by PACA so that the buyer holds legal title to the produce and its derivatives/proceeds, but the seller retains an equitable interest in the trust property pending payment. *Endico Potatoes*, 67 F.3d at 1067; *see also Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc.*, 336 F.3d 410, 413 (5th Cir.2003) (holding that § 499e(c)(2) creates, "immediately upon delivery, a nonsegregated 'floating' trust

in favor of sellers on the perishable commodities sold and the products and proceeds derived from the commodities"). Second, "if the seller is not paid promptly, the buyer must preserve trust assets, and the seller has a 'superpriority' right that trumps the rights of the buyer's other secured and unsecured creditors." *Bocchi Americas Assocs. Inc.*, 515 F.3d at 388; *accord* 7 U.S.C. § 499e(c)(1); *see also Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir.1997) ("The PACA grants the sellers of such commodities the right to recover against the purchasers and puts the sellers in a position superior to all other creditors.").

■■ Sellers are only entitled to the trust assets and "super-priority" status if they comply with certain procedural requirements. An unpaid seller must demonstrate that:

(1) the commodities sold were perishable agricultural commodities;

(2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker;

(3) the transaction occurred in interstate or foreign commerce;

(4) the seller has not received full payment on the transaction; and

(5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by law.

7 U.S.C. § 499e. If a seller satisfies § 499e's requirements, however, a trust automatically arises in favor of the seller until full payment has been received. *Id.* § 499e(c)(2); *see also In re Milton Poulos, Inc.*, 947 F.2d 1351, 1352 (9th Cir.1991).

■ Because trust principles apply and the debtor only holds legal—not equitable—title, if the debtor files for bankruptcy, the PACA trust assets are excluded from the bankruptcy estate. *See, e.g.,* 11 U.S.C. § 541(d) ("Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."); *Ruby Robinson Co., Inc. v. Herr*, 453 Fed. Appx. 463, 465 (5th Cir.2011) ("Ordinary principles of trust law apply to trusts created under PACA, so that for instance the trust assets are excluded from the estate should the dealer go bankrupt." (quoting *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir.1997))); *In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir.1996) ("[I]n the event of the Produce Debtor's bankruptcy, the Bankruptcy Code excludes PACA trust assets from the bankruptcy estate."); *see generally United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (The "Bankruptcy Code plainly excludes [from the bankruptcy estate] property of others held by the debtor in trust at the time of the filing of the [bankruptcy] petition." (internal citation and quotation marks omitted)).

### B. *Bankruptcy Court Jurisdiction and Judicial Power*

■ PACA Claimants argue that because PACA trust assets are excluded from the bankruptcy estate, the bankruptcy court is foreclosed from adjudicating any PACA claims. However, PACA Claimants' argument overlooks the statutory framework of bankruptcy court jurisdiction. As outlined below, the bankruptcy court's jurisdiction is not limited solely to adjudicating assets within the bankruptcy estate.

■ "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514

U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). To determine whether a bankruptcy court has jurisdiction, this Court must first examine whether the district court had jurisdiction under 28 U.S.C. § 1334(b). *See id.* (holding that bankruptcy courts derive their jurisdiction from the statutory jurisdiction of the district court). If jurisdiction exists under § 1334(b), a district court may refer the matter to a bankruptcy court. 28 U.S.C. § 157. The extent to which a bankruptcy court can solely adjudicate the matter, or must recommend a particular disposition to a district court, depends on 28 U.S.C. § 157's jurisdictional grant, namely whether the matter delegated to the bankruptcy court is a core or non-core proceeding. *Id.*

1. *Section 1334(b) and "Related to" Cases Under Title 11*

 Pursuant to 28 U.S.C. § 1334, district courts have jurisdiction in all civil proceedings "arising under title 11 [the Bankruptcy Code], or arising in, or related to cases under title 11." For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under," "arising in a case under," or "related to a case under" Title 11, because each component operates conjunctively. *In re Wood*, 825 F.2d 90, 93 (5th Cir.1987). Thus, jurisdiction exists if the matter is at least "related to" the bankruptcy. *Id.*

 Section 1334 does not define "related" matters. The Fifth Circuit, however, has adopted the "related to" test the Third Circuit developed in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984). *See Wood*, 825 F.2d at 93. *Pacor* holds that "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedoms of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." 743 F.2d at 994. The "related to" category of cases is quite broad and includes proceedings in which the outcome "could conceivably have any effect on the estate being administered in bankruptcy." *In re Canion*, 196 F.3d 579, 585 (5th Cir.1999) (quoting *Pacor*, 743 F.2d at 994). "Certainty or even likelihood of such an effect is not a requirement." *Id.* at 587 n. 30.

 The bankruptcy court in the instant action had "related to" jurisdiction. Even though PACA Claimants are correct that PACA trust assets are excluded from the bankruptcy estate, *see Ruby Robinson Co.*, 453 Fed.Appx. at 465, this exclusion alone does not defeat the bankruptcy court's jurisdiction. *Pacor* held that "the proceeding need not necessarily be against the debtor *or against the debtor's property*." *Id.* (emphasis added). In fact, "related to" jurisdiction can still exist when the property in question is not necessarily the property of the bankruptcy estate, as long as the third-party suit could conceivably affect the administration of bankruptcy estate. *See, e.g., Celotex*, 514 U.S. at 308–10, 115 S.Ct. 1493 (holding that bankruptcy court had jurisdiction to issue injunction prohibiting execution of supersedeas bond that was not part of the debtor's Chapter 11 bankruptcy estate because bankruptcy court's jurisdiction extends to "more than the simpl[e] proceedings involving the property of the estate"); *In re Zale Corp.*, 62 F.3d 746, 757–58 (5th Cir.1995) (holding that even though certain contract claims were not part of the debtor's bankruptcy estate, because the claims could conceivably affect on the estate, the bankruptcy court had jurisdiction to temporarily enjoin such claims).

In *In re Southland + Keystone*, the appellants argued that because the PACA trust was not included within the bankruptcy estate, the bankruptcy court lacked

jurisdiction. 132 B.R. 632, 638 (9th Cir. BAP 1991). But the Bankruptcy Appellate Panel for the Ninth Circuit found the appellant's position "untenable." *Id.* The court explained that

> PACA proceeds are not property of the estate does not mean the bankruptcy court does not have jurisdiction to make that determination. Under Appellant's reasoning, any bankruptcy court order determining that assets are not property of a bankruptcy estate would be of no effect because the court would not have had jurisdiction to enter the order. Clearly, a determination of *whether* assets are property of a bankruptcy estate concerns administration of the estate.

*Id.* (emphasis added).

As in *Southland + Keystone,* the bankruptcy court in the instant action had jurisdiction to determine *whether* the PACA claims are PACA trust assets and, thus, excluded from the bankruptcy estate. *See In re Strategic Techns., Inc.,* 142 Fed. Appx. 562, 565 (3d Cir.2005) (holding that bankruptcy court had jurisdiction to determine *whether* trust assets were part of bankruptcy estate); *In re Carolina Produce Distrib.,* 110 B.R. 207, 210 (W.D.N.C. 1990) ("The Bankruptcy Court, therefore, will need to consider *whether* Plaintiff Monterey or any other potential claimant, properly and timely has perfected its interest in the [PACA] trust. The Bankruptcy Court also will need to consider the scope of the PACA-created trust." (emphasis added)); *see also Maislin Indus., U.S. v. A.J. Hollander Co.,* 69 B.R. 771, 775 (E.D.Mich.1986) (holding that debtor's adversary proceedings to recover on accounts receivable that are encumbered by security interest are related proceedings over which the bankruptcy court has jurisdiction, where validity and extent of security interest is *yet to be determined*).

It is appropriate to make this threshold showing in bankruptcy court, because if the requirements for PACA trust protection are not met, the PACA claimant's assets that were formerly part of the PACA trust become part of the debtor's bankruptcy estate. *See In re Matter of United Fruit & Produce Co., Inc.,* 86 B.R. 14, 16 (Bankr.D.Conn.1988) (holding that a bankruptcy court jurisdiction was proper because "[a] possibility exists that equity in the receivables may remain for the debtor's estate"). Furthermore, once the PACA trust claims are settled, the remaining funds in the PACA trust res belong to the debtor's estate. *In re Meyer's Bakeries, Inc.,* 402 B.R. 314, 319 (Bankr. W.D.Ark.2009) (holding that, in a bankruptcy case, after all eligible suppliers are paid in full the remaining res of a PACA trust becomes property of the bankruptcy estate).

As a practical matter, the bankruptcy court did adjudicate whether certain claims were entitled to PACA trust protection. As outlined in the bankruptcy court's Order Establishing a Deadline to File PACA Trust Claims (Bankr.Dkt. # 52), the court ordered that Delta must notify all potential creditors (as listed on Delta's accounts payable schedule) of the opportunity to file PACA trust claims by March 2, 2012. The court permitted Special Counsel to file any objections (on behalf of Delta) and Produce Creditors to file objections as well. (*Id.*) Throughout March and April 2012, the bankruptcy court received objections from Special PACA Counsel and Produce Creditors. On July 6, 2012, the court issued an order settling many of the objections made by the parties, including whether prejudgment interest applies, whether ineligible goods were included in the PACA claims, and whether PACA Claimants' attorney fees were included in their PACA claims. (Bankr.Dkt. # 274.)

Because whether PACA Claimants' claims were entitled to PACA trust protection "could conceivably have [had an] effect on the estate being administered in bankruptcy," *Canion*, 196 F.3d at 585, and arguably *did* have an effect on the bankruptcy estate, the bankruptcy court had "related to" jurisdiction over the PACA claims.

### 2. *Section 157 and Core vs. Non–Core Proceedings*

■■■■■ Although § 1334 delineates whether jurisdiction exists, a bankruptcy judge's power to fully adjudicate a particular matter depends on the type of proceeding under 28 U.S.C. § 157(b)–(c).[2] Section 157 ensures that a bankruptcy court acts with the appropriate adjudicative authority in considering claims in bankruptcy. If the matter is a core proceeding, the bankruptcy court can exercise full judicial power. *Id.* § 157(b)(1). If the matter is a non-core proceeding, the bankruptcy judge has the limited power to hear the case and must submit proposed findings of fact and conclusions of law to the district court. *Id.* § 157(c) (2).

■■■■■ For a bankruptcy court to have core jurisdiction over a proceeding, the proceeding must "arise under title 11" or "arise in a title 11 case." 28 U.S.C. § 157(b)(1). A proceeding "arises under" Title 11 if the claim asserted is created by or based on a provision of the bankruptcy code; a proceeding "arises in" a case under title 11 if it is not based on any right

expressly created by the bankruptcy code but has no existence outside of the bankruptcy case. *Wood*, 825 F.2d at 96–97.

■■■ The bankruptcy court and Special Counsel concentrated much of their analysis on whether adjudicating the PACA claims was a core or non-core proceeding. But the distinction between core and non-core is irrelevant if the parties consented to the bankruptcy court's adjudication. *See id.* § 157(c)(2) ("[T]he district court, *with the consent of all the parties to the proceeding,* may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments." (emphasis added)); see also *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir. 1988) (noting that when parties consent to the bankruptcy court's adjudication, it is immaterial whether the matter is core or non-core).

Here, at least one PACA Claimant, Rio Bravo,[3] explicitly consented to the bankruptcy court's adjudicative authority. (Case No. 1:11–cv–01114–SS, Dkt. # 27 at 2 (Order by Judge Sparks transferring case to Judge Rodriguez "finding that all parties had agreed to the procedure of consolidating all cases in San Antonio with a reference to the Bankruptcy Court in San Antonio").); (Case No. 5:12–cv–00046–XR, Dkt. # 28 at 2 (Order by Judge Rodriguez transferring case to bankruptcy court, noting that "the parties apparently agree that the Bankruptcy Court would be

---

**2.** Special Counsel argues that the bankruptcy court exercised appropriate equitable powers under 11 U.S.C. § 105(a). But this argument confuses a bankruptcy judge's judicial powers under § 105 with subject-matter jurisdiction under § § 1334 and 157. *See In re Zale Corp.*, 62 F.3d 746, 751 (5th Cir.1995) ("Subject matter jurisdiction and power are separate prerequisites to the court's capacity to act. Subject matter jurisdiction is the court's authority to entertain an action between the

parties before it. Power under section 105 is the scope and forms of relief the court may order in an action in which it has jurisdiction." (quoting *In re American Hardwoods, Inc.*, 885 F.2d 621, 624 (9th Cir.1989))).

**3.** Rio Bravo is the only PACA Claimant who had filed a PACA claim in district court. The rest of PACA Claimants filed their claims in bankruptcy court.

the appropriate and preferable place to adjudicate the [PACA] claims presented in this case").). The rest of PACA Claimants submitted their PACA claims directly to the bankruptcy court sometime between February and March 2012. (*Compare* Bankr.Dkt. # 52 at 2 ¶¶ 1–2 (outlining claims procedure deadline), *with* Bankr. Dkt. # 163 (summary of PACA claims submitted March 22, 2012).)

■■■ Moreover, a party may waive the right to a core vs. non-core determination by failing to make a timely motion. *See* 21 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion *or on timely motion of a party,* whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." (emphasis added)); *In re Mullarkey,* 536 F.3d 215, 222 (3d Cir.2008); *see also In re Sheridan,* 362 F.3d 96, 100 (1st Cir.2004) ("[T]he protections afforded by the Northern Pipeline core/non-core distinction may be waived or forfeited, either by (i) consenting to the bankruptcy court's treatment of an otherwise non-core proceeding as core, or (ii) failing to raise or pursue the issue adequately on appeal.").

■■■ On January 25, 2012, the bankruptcy court entered its order calling for submissions of PACA claims to be fully adjudicated by the bankruptcy court. (Bankr.Dkt. # 52.) PACA Claimants did not object to the bankruptcy court exercising powers consistent with a core proceeding until September 4, 2012. (Dkt. # 294.) In fact, PACA Claimants Kingdom Fresh, I. Kunik, and Five Brothers sought to avail themselves of the bankruptcy court's adjudicative authority by filing substantive responses to Special Counsel's assessment of their PACA claims. (Bankr.Dkt. # 207 (requesting that the court deny Special Counsel's objections and grant "any other relief as the Court deems appropriate upon consideration of this matter").) Giv-

en that PACA Claimants had nearly nine months to object to the bankruptcy court's exercise of judicial power and PACA Claimants availed themselves of that power, the Court finds that PACA Claimants waived any objection to the bankruptcy court exercising full adjudicative authority under § 157(b).

■■■ PACA Claimants' arguments that objections to subject-matter jurisdiction may be asserted at any time do not apply to a § 157 analysis. "A [core vs. non-core] determination does not affect the bankruptcy court's power to hear the case. Rather, it affects the form of the bankruptcy court's disposition, i.e., whether it is final and appealable to the district court, or a report and recommendation to be reviewed by the district court." *Mullarkey,* 536 F.3d at 222.

In conclusion, the bankruptcy court had subject-matter jurisdiction under § 1334 and properly exercised its judicial power under § 157.

### C. *Awarding Special Counsel Attorney Fees from PACA Trust*

The Court must first address Special Counsel's arguments that PACA Claimants' objections are barred by the doctrine of judicial estoppel.

#### 1. *Judicial Estoppel*

■■■ Special Counsel argues that PACA Claimants' objections to paying Special Counsel with PACA trust funds is barred by judicial estoppel. "Judicial estoppel is an equitable doctrine that 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'" *Hopkins v. Cornerstone Am.,* 545 F.3d 338, 347 (5th Cir.2008) (quoting *Hall v. GE Plastic Pac. PTE Ltd.,* 327 F.3d 391, 396 (5th Cir.2003)). The purpose of the doctrine is to "protect

... the essential integrity of the judicial process" by reducing the "risk of inconsistent court determinations." *New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal citation and quotation marks omitted). Generally, the Fifth Circuit recognizes "at least two requirements to invoke the doctrine: (1) the party's position must be clearly inconsistent with its previous one, and (2) the previous court must have accepted the party's earlier position." *Id.* (quoting *Hall,* 327 F.3d at 396).

█ In support of the first part of the judicial estoppel test, Special Counsel asserts that PACA Claimant Kingdom Fresh has "flip-flopped in their position regarding the use of PACA trust funds for payment of Special Counsel's fee" by first "expressly consenting" to the use of PACA trust funds when Kingdom Fresh participated in the drafting of the PACA Order and then later objecting. Special Counsel cites an email from Kingdom Fresh's counsel, Kevin Kelley, to several other attorneys involved in the litigation—not to the court—wherein Mr. Kelley voiced six concerns regarding the proposed order. (Dkt. # 13–1.) But even if PACA Claimant Kingdom Fresh did "expressly consent"[4] or knew that Special Counsel's fees would come from the PACA trust fund, Special Counsel's argument fails the second part of the judicial estoppel inquiry. There is no evidence in the record that the bankruptcy court's January 25 Order permitting Special Counsel's fee to be paid out of the PACA trust "accepted," or relied on, Kingdom Fresh's earlier "position." This

is primarily due to the fact that prior to the Court's January 25 Order, Kingdom Fresh had not advanced any position *to the court.* Although the bankruptcy court's Order was predicated on a "joint" Motion for Orders Establishing a Deadline to File PACA Trust Claims filed on January 19, 2012 by "the two Debtors and PACA Claimants" (Bankr.Dkt. # 31), the PACA claimants that agreed to the positions argued in the motion did not include any PACA Claimants currently before this Court.[5] Accordingly, Special Counsel's judicial estoppel argument fails.

### 2. *Special Counsel's Attorney Fees from PACA trust*

The Court next addresses the substantive merits of PACA Claimants' objections to the bankruptcy court's Order granting Special Counsel attorney fees from the PACA trust.

█ Generally, attorney fees are granted only when provided by statute. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 249, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). PACA does not explicitly provide for attorney fees. *Golman–Hayden Co., Inc.,* 217 F.3d at 352. Nonetheless, PACA does state that claimants are entitled to "full payment of the sums owing *in connection with* perishable agricultural commodities transactions." 7 U.S.C. § 499e(c)(2) (emphasis added).

█ The Fifth Circuit has not yet ruled on whether attorney fees are included as "sums owing in connection with" a

---

4. This Court need not and does not offer any opinion regarding whether Kingdom Fresh did or did not indicate consent to the other attorneys regarding the payment of Special Counsel's fees out of the PACA trust.

5. The PACA Claimants that did agree to the motion include: Wilson Davis Co.; Averrit Brokerage Co., Inc.; A & A concepts, LLC;

Greenhouse Produce Company, LLC; Juniper Tomato Grower, Inc.; Mecca Family Farms, Ltd.; London Fruit, Inc.; Triple H Produce, LLC; and The Pumpkin Patch, LLP. (Bankr. Dkt. # 31 at 9.) PACA Claimants were, however, present at the hearing to discuss the Motion, but did not address the bankruptcy court. (*See* Bankr.Dkt. # 381 (transcript of hearing held on September 21, 2012).)

perishable agricultural transaction under PACA. Several sister circuit courts, however, have affirmed that attorney fees *for PACA claimants* are recoverable. *See Coosemans Specialties, Inc. v. Gargiulo,* 485 F.3d 701, 709 (2d Cir.2007) ("[W]here the parties' contracts include a right to attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA."); *Country Best v. Christopher Ranch, LLC,* 361 F.3d 629, 633 (11th Cir.2004) (finding that Congress intended to include attorney fees and prejudgment interest in a PACA claimant's claim as long as they are bargained for); *Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc.,* 307 F.3d 1220, 1223–24 (9th Cir.2002) (holding that Congress drafted PACA broadly to include not only the value of commodities sold but also expenses in connection with the sale of the commodities— including attorney expenses).

But these decisions do not address whether Special Counsel, acting as a *trustee* for the PACA trust, is entitled to attorney fees. The second circuit, however, has addressed an analogous situation. In *C.H. Robinson Co. v. Alanco Corp.,* Robinson, a produce seller, filed a PACA claim to recover more than $200,000 in unpaid produce purchases from the bankrupt Alanco Corp., a produce buyer. 239 F.3d 483, 485 (2d Cir.2001). When Robinson settled his PACA trust claim with Alanco, Mark Mandell, acting as trustee for the PACA trust, turned over the remaining proceeds Alanco had left to Robinson, withholding $18,960.57. *Id.* Mandell then applied to the district court to enforce an attorney's lien on the $18,960.57. *Id.* The district court denied Mandell's motion. *Id.*

On appeal, Mandell argued that he was entitled to $18,960.57 as payment for fees he earned performing necessary services to collect Alanco's accounts receivable, which were held in trust for the benefit of

Robinson under PACA. *Id.* at 486. Mandell also contended that his services were in fulfillment of Alanco's duty to the PACA trust beneficiaries and solely for their benefit, and that he was entitled to be paid out of the trust res under general principles of trust law. *Id.*

The Second Circuit disagreed. The court acknowledged that "blackletter trust law" provides that a "trustee can properly incur expenses which are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust." *Id.* (quoting Restatement of Trusts (Second) § 188 (1957)). But PACA is meaningfully different. *Id.* at 487 ("Trusts created under PACA are statutory trusts, and common law trust principles are not applicable if they conflict with the language of the statute, the clear intent of Congress in enacting the statute, or the accompanying regulations."). In fact, the only reason Congress labeled PACA claims as "trusts" was to strengthen a produce seller's contractual rights in bankruptcy. *Id.; see also* H.R.Rep. No. 543, 98th Cong., 2d Sess. 3 (1983) (explaining that given the proclivity for buyers to enter bankruptcy, PACA was intended to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities" in bankruptcy proceedings).

Additionally, the Second Circuit found that the accompanying regulations directed that PACA trustees have a duty under PACA to pay the full amount of the debt owed to PACA claimants *before* paying any other creditors (e.g., attorneys). *Id.* at 487–88. For example, the court cited 7 C.F.R. § 46.46(a)(2), which defines "dissipation" of trust assets as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid [sellers] to recover money owed in con-

nection with produce transactions." *Id.* The court also referenced 7 C.F.R. § 46.46(d), which states that "[c]ommission merchants, dealers, and brokers are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations of perishable agricultural commodities." *Id.* at 488. Because Mundell's withholding of his attorney fees left Alanco unable to satisfy the remainder of Robinson's PACA claim, Mundell impaired Robinson's ability to recover the money owed under PACA. *Id.* The Second Circuit concluded: "Allowing a defunct PACA trustee to pay other creditors [i.e., their attorneys] with PACA funds before the seller [PACA claimant] is paid in full would frustrate [Congress's] purpose, and would be contrary to the language of PACA and its accompanying regulations." *Id.* As such, Mundell, as the PACA trustee, was not able to use PACA funds to pay attorney fees incurred in collecting accounts receivable held in trust for a seller of perishable agricultural commodities. *Id.* at 488–89.

Special Counsel's role in this litigation was similar in all relevant respects to Mundell's role in *C.H. Robinson*. Per the bankruptcy court's Order Establishing a Deadline to File PACA Trust Claims, the court authorized Special Counsel to "take those steps reasonably necessary to preserve and collect the PACA trust assets" and "to facilitate the distribution of the collected PACA trust assets" by:

(a) attempting to determine the extent to which assets are PACA trust assets, including filing or defending adversary proceedings including declaratory judgment actions,

(b) examining PACA trust claims filed by alleged PACA trust beneficiaries,

and objecting to those claims where appropriate,

(c) collecting the Debtors' accounts receivables, including filing adversary actions, and

(d) liquidating PACA trust assets other than the accounts receivables into cash.

(Bankr.Dkt. # 52 at 8–9.) Essentially, Special Counsel acted as a trustee for the PACA trust. According to Black's Law Dictionary, a trustee is one who has legal title to property and "holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary." *Black's Law Dictionary* (9th ed. 2009). Black's also explains, "Generally, a trustee's duties are to convert to cash all debts and securities that are not qualified legal investments ... [and] to protect and preserve the trust property, and to ensure that it is employed solely for the beneficiary, in accordance with the directions contained in the trust instrument." *Id.* Because Special Counsel was required to take steps to preserve PACA trust assets for the benefit of PACA beneficiaries, Special Counsel acted as a trustee of the PACA trust.

Under the reasoning in *C.H. Robinson*, Special Counsel, acting as a trustee of the PACA trust, is not entitled to attorney fees paid out of the PACA trust. Special Counsel "has a fiduciary obligation under PACA to repay the full amount of the debt owed to the PACA beneficiary." *See C.H. Robinson*, 239 F.3d at 488. Here, PACA trust beneficiaries had not received full payment when the bankruptcy court granted Special Counsel's First Interim Application for attorney fees.[6] Only when PACA trust beneficiaries receive full payment may a PACA trustee use the remain-

---

**6.** The parties do not address whether PACA beneficiaries had received full payment by September 25, 2012, the date of the bankrupt-

cy court's order granting the First Interim Application for attorney fees.

ing PACA trust funds to pay the trustee's attorney fees. Any action before PACA trust beneficiaries receive full payment would directly violate the language of PACA and its regulations.

In conclusion, the Court finds that the bankruptcy court acted within its jurisdictional scope as defined by 28 U.S.C. § 1334 and exercised appropriate judicial power as outlined in 28 U.S.C. § 157. Nevertheless, the bankruptcy court erred in granting Special Counsel his First Interim Application for attorney fees to be paid from the PACA trust assets (Bankr. Dkt. # 320).

### CONCLUSION

For the foregoing reasons, the Court **AFFIRMS IN PART** and **VACATES IN PART** the bankruptcy court's Order granting First Interim Application for attorney fees (Bankr.Dkt.# 320).

IT IS SO ORDERED.